United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ELLEN WILLIAMS,

        Plaintiff,

   v.

ALAMEDA COUNTY, CALIFORNIA
et al.,

        Defendants.

Case No.  21-cv-00523-CRB

**ORDER GRANTING MOTION TO DISMISS AND DEFENDANTS' RJN; DENYING PLAINTIFF'S RJN**

Defendants County of Alameda and Nicole Radford, a social worker employed by the County, move to dismiss all but one claim in Plaintiff Ellen Williams's First Amended Complaint (FAC).  MTD FAC (dkt. 36) at 9.  Williams alleges that Radford made false police reports claiming that Plaintiff was abusing her elderly husband, Dr. Michael Williams.  FAC (dkt. 33) ¶¶ 25–26, 38, 40.  Williams plans to add additional defendants if she discovers their involvement.  Id. ¶¶ 8–9.

Williams brings claims under 42 U.S.C § 1983, asserting that Radford's conduct violated the Fourth and Fourteenth Amendments.  Id. ¶¶ 43–45.  Williams brings further claims under 42 U.S.C § 1983, asserting that the County's policies caused those constitutional violations pursuant to Monell v. Dept. of Soc. Servs., 436 U.S. 658 (1978).  Id. ¶¶ 43–52.  Williams further asserts that Defendants violated California Civil Code section 51.7 (the Ralph Act) (prohibiting acts of violence or threats of violence against a person on account of their protected personal characteristics), violated California Civil Code section 52.1 (the Bane Act) (prohibiting interference with a person's constitutional

1    rights by acts of violence or threat of violence), and committed common-law negligence.[1]

2    Id. ¶¶ 53–65.

3        In her Opposition, Williams seeks leave to add a claim asserting violations of

4    California Constitution Article I, Section 7, specifically the equal protection clause.  Opp.

5    (dkt. 40) at 9–10.  Both parties have submitted requests for judicial notice (RJN).  See

6    Defendants' RJN (dkt. 36 attach. 1); see also Williams's RJN (dkt. 40 attach. 1–3).

7        The Court finds this matter suitable for resolution without oral argument pursuant to

8    Civil Local Rule 7-1(b), and therefore vacated the motion hearing.  As explained below,

9    the Court grants the motion to dismiss, with leave to amend one federal claim and to add

10   the California constitution claim, with restrictions.  Additionally, the Court grants

11   Defendants' RJN and denies Williams's RJN.

12   **I.    BACKGROUND**

13       **A.    Parties**

14       Williams is a Black woman, married to Dr. Williams, a practicing oncologist.  FAC

15   ¶¶ 25, 36, 41.  Williams is a resident of the County of Alameda and the City of Dublin.  Id.

16   ¶ 3.  Radford is an Adult Protective Services intake social worker,[2] employed by Adult

17   Protective Services of the County of Alameda.  MTD FAC at 8–9.

18       Williams currently has a case before another Northern District court, Williams v.

19   City of Pleasanton, No. 20-cv-08720-WHO.  She filed the initial complaint in that case on

20   December 9, 2020, and discovery is ongoing.  She is, as here, represented by James M.

21   Braden.  In that case, Williams alleges that she was arrested at Valley Care Medical Center

22   (VCMC) on November 14, 2019, while visiting her husband.  Williams subsequently sued

23   both the City of Pleasanton, some police employees (together, Pleasanton Defendants),

24   VCMC, and some of its employees.  Compl. (dkt. 17) in Williams v. Pleasanton, No. 20-

25

26   _____

     [1] Williams brings the three state law claims against both Radford and the County via
     respondeat superior.  See id. ¶¶ 56, 61, 65

27   [2] Williams alleges that Radford lied by saying that she was not a social worker and was
     only an intake worker.  Id. ¶¶ 28–29.  Defendants refer to Radford as an "intake social

28   worker."  MTD FAC at 8–9.  Williams does not challenge this characterization in her
     Opposition.  See Opp. at 1.

1    cv-08720 ¶¶ 4–20 (Pleasanton Compl.).

2         In the present case, Williams brings many of the same claims against Radford and

3    the County of Alameda as she did against the Pleasanton Defendants.  See id. ¶¶ 48–62,

4    79–86 (asserting § 1983 claims, common law negligence, Ralph Act, and Bane Act

5    claims).  She also recycles some of the pleading language from her Pleasanton Complaint.

6    Compare id. ¶¶ 21–32 (alleging "a culture of tolerance . . . a 'Code of Silence'. . .

7    indifference in hiring . . . and actual notice of problems with the accountability of

8    employees. . . ."), with FAC ¶¶ 13–24 (using the same language).  Judge Orrick dismissed

9    the Pleasanton case with leave to amend on all the above claims, except the negligence

10   claim, which Pleasanton Defendants did not seek to dismiss.  See Williams v. City of

11   Pleasanton, No. 20-cv-08720, 2021 WL 3932012, at *2 n.2, *3–4 (N.D. Cal. Sept. 2, 2021)

12   (order granting motion to dismiss).

13        Williams did not reference the Pleasanton case in the FAC here.  See FAC.

14   Defendants cited the case in their motion to dismiss, but only as legal authority.  See MTD

15   FAC at 22.  Williams then suggested a connection between the two cases in her

16   Opposition.  See Opp. at 3 ("Plaintiff suspects, and will seek evidence to prove it, that

17   Radford involved herself in these maliciously false abuse allegations at the request of, or in

18   some form of association with, people associated with Valley Care Medical Center and the

19   Pleasanton Police Department.") (cleaned up).  Beyond this suggestion, Williams does not

20   go on to link the alleged events of the Pleasanton case with the claims in the present case.

21   There is no further mention of the Pleasanton case in the present case's material.

22        **B.     First Amended Complaint**

23        In the present case, Williams alleges as follows.  On December 31, 2019, Radford,

24   in her capacity as a social worker, falsely reported to the police that Williams was abusing

25   her elderly husband, Dr. Williams.  FAC ¶ 25.  Radford lied about receiving an anonymous

26   report alleging said abuse and made other outlandish misrepresentations to the police.[3]  Id.

27   _____

28   [3] Williams alleges that Radford falsely claimed to have made multiple attempts to contact
     Dr. Williams, and, having received no response, concluded that Dr. Williams was dead,

¶ 26.

The City of Dublin Police contacted the Williamses, whereupon Dr. Williams assured them that he was alive and well.  Id. ¶ 27.  The police informed Williams of Radford's report.  Id.  Williams called Radford to confront her directly.  Id. ¶¶ 28–35.  In that call, Radford attempted to arrange an interview with Dr. Williams.  Id. ¶ 35.  In that call, Radford also indicated that she knew that Williams is Black, and that she had acted against Williams out of racial animus.[4]  Id. ¶¶ 36–37.

Subsequently,[5] Radford made three additional false reports to the Dublin Police about Williams.  Id. ¶ 38.  Radford also contacted Williams directly, on multiple occasions, to coerce a confession of abuse.  Id. ¶ 35.  Radford continued to act out of racial animus.  Id. ¶ 41.

Williams also alleges that the County had customs, policies, and practices encouraging Radford's conduct; that the County failed to train or discipline Radford; that high-ranking County officials ratified Radford's conduct or were deliberately indifferent as to her conduct; that the County permitted a "Code of Silence"; and that the County knew of a pattern of employee misconduct but failed to rectify said misconduct.  Id. ¶¶ 13–24.

Plaintiff brings (Claim 1) claims under 42 U.S.C. § 1983 against Radford for violations of her Fourth and Fourteenth Amendment (due process and equal protection) rights.  Id. ¶¶ 43–45.  She brings (Claim 2) claims under 42 U.S.C. § 1983 against the County of Alameda for those same violations (Monell claims).  Id. ¶¶ 46–52.  She brings (Claim 3) common law negligence claims against Radford and against the County via respondeat superior.  Id. ¶¶ 53–57.  She brings (Claim 4) claims arising from violations of

---

and that Williams had killed him.  Id. ¶¶ 25–26
[4] Williams alleges that "the way in which Radford communicated . . . to Plaintiff her knowledge of Plaintiff's race" indicated racial animus or antipathy.  Id. ¶ 37.  The FAC does not further detail the content of Radford's communications and how they betrayed racial animus.
[5] The FAC does not specify dates for the alleged events, save two.  Williams alleges that Radford made a false report of elder abuse to the City of Dublin Police on December 31, 2019.  FAC ¶¶ 25, 38.  Williams further alleges the City of Dublin Police contacted her and her husband that same day (December 31, 2019).  Id. ¶ 27.  There are no dates attached to Williams's call to Radford or Radford's subsequent communications to Williams.

United States District Court
Northern District of California

1    the Ralph Act against Radford and against the County via <u>respondeat superior</u>.  <u>Id.</u> ¶¶ 58–

2    61.  Finally, she brings (Claim 5) claims arising from violations of the Bane Act against

3    Radford and against the County via <u>respondeat superior</u>.  <u>Id.</u> ¶¶ 62–65.

4        **C.**    **Further Procedural History**

5          After Plaintiff filed her initial complaint, <u>see</u> Compl. (dkt. 1), Defendants moved to

6    dismiss all claims, <u>see</u> MTD (dkt. 32).  Williams filed an amended complaint with

7    additional facts, including allegations of racial discrimination.  <u>See</u> FAC.[6]  Williams also

8    dropped her claim against the County asserting negligent hiring and training of County

9    employees, including Radford.  <u>See</u> Compl. ¶¶ 56–59.

10         In response, Defendants filed a new motion to dismiss all claims except the § 1983

11   equal protection claim against Radford.  <u>See</u> MTD FAC at 9.  In her Opposition, Williams

12   (1) failed to respond to Defendant's motion to dismiss her § 1983 Fourth Amendment

13   claim, <u>see</u> Opp., (2) conceded that she did not allege a viable "deprivation of liberty" due

14   process claim, <u>see id.</u> at 3, (3) did not directly address her negligence and Bane Act

15   claims,[7]  <u>see id.</u> at 7–9, and (4) requested the Court's leave to amend and add a new claim

16   arising under Article I, Section 7 of the California Constitution.  <u>See id.</u> at 9.

17   **II.**    **LEGAL STANDARD**

18         Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court may dismiss

19   a complaint for failure to state a claim upon which relief may be granted.  A complaint

20   must plead "sufficient factual matter, accepted as true, to state a claim to relief that is

21   plausible on its face."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (cleaned up).  A claim

22   is plausible "when the plaintiff pleads factual content that allows the court to draw the

23   reasonable inference that the defendant is liable for the misconduct alleged."  <u>Id.</u>  When

---

[6] The FAC now includes the following additional allegations not found in the original complaint: (1) Radford lied about receiving an anonymous call reporting elder abuse, <u>id.</u> ¶¶ 25, 32, 40; (2) Radford called the police multiple times after their initial phone conversation, <u>id.</u> ¶¶ 38–39; (3) Radford threatened Plaintiff with prosecution, <u>id.</u> ¶ 35; and (4) Radford had knowledge of Plaintiff's race and acted out of "antipathy and animus against Plaintiff as a Black person," <u>id.</u> ¶ 37; <u>see also id.</u> ¶¶ 36, 41.

[7] Williams did address Defendant's asserted immunities, which would defeat all of her state law claims.  <u>See</u> Opp. at 7–9.

United States District Court
Northern District of California

evaluating a motion to dismiss, the court "must take all factual allegations as true and draw all reasonable inferences in favor of the nonmoving party." Murguia v. Langdon, 61 F.4th 1096, 1106 (9th Cir. 2023) (citing Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987)).

In general, an absolute immunity defense is properly raised in a motion to dismiss, "'for the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action' an entitlement that 'is effectively lost if a case is erroneously permitted to go to trial.'" Goldstein v. City of Long Beach, 481 F.3d 1170, 1172 (9th Cir. 2007) (quoting Mitchell v. Forsyth, 472 U.S. 511, 525 (1985)) (reversed on other grounds).

If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). A court has discretion to deny leave to amend due to "undue delay, bad faith . . . repeated failure to cure deficiencies . . ., undue prejudice to the opposing party . . ., [and] futility of amendment." Leadsinger, Inc. v. BMG Music Pub., 512 F.3d 522, 532 (9th Cir. 2008).

## III. DISCUSSION

This order is organized as follows. Section A addresses Williams's § 1983 Fourth Amendment claims against both Radford and the County and dismisses both claims with prejudice. Section B addresses Williams's § 1983 due process claims against both Radford and the County and dismisses both claims with prejudice. Section C.1 reiterates that Defendants do not seek dismissal of Williams's § 1983 equal protection claim against Radford, in contrast to Section C.2, which addresses Williams's § 1983 equal protection claim against the County and dismisses with leave to amend. Section D addresses Williams's three state law claims and dismisses those claims with prejudice. Section E addresses Williams's request to add a California Constitution equal protection claim and gives leave for her to do so, with restrictions. Finally, Section F addresses the parties' requests for judicial notice.

### A.    42 U.S.C. § 1983 Fourth Amendment Claims

The FAC asserts that Radford, acting under color of state law, deprived Williams of her rights under the Fourth Amendment, and that the County's policies caused those constitutional violations (a <u>Monell</u> claim).  <u>See</u> FAC ¶¶ 43–52.  Williams sues both Radford and the County under 42 U.S.C. § 1983.  <u>Id.</u>  Defendants seek dismissal of both claims; they argue that Williams has failed to show that a search or seizure occurred.  MTD FAC at 11.  The Court dismisses both claims with prejudice because Williams failed to oppose dismissal of these claims.  <u>See</u> Opp. (making no mention of the Fourth Amendment).  When a plaintiff fails to address defendants' arguments, "such a failure in an opposition brief constitutes abandonment of the claim."  <u>Moore v. Apple, Inc.</u>, 73 F. Supp. 3d 1191, 1205 (N.D. Cal. 2014).  In such situations, "courts generally dismiss [the claim] with prejudice."  <u>Id.</u> (quoting <u>Homsy v. Bank of Am., N.A.</u>, No. C 13–01608 LB, 2013 WL 2422781, at *5 (N.D. Cal. June 3, 2013)); <u>see also</u> <u>Citizens for Free Speech, LLC v. Cnty. of Alameda</u>, No. C 19-1026 SBA, 2020 WL 999644, at *4 (N.D. Cal. March 2, 2020) ("Plaintiffs do not respond to Defendant's argument. . . the implication of this lack of response is that any opposition to this argument is waived.") (quoting <u>City of Arcadia v. U.S. Envtl. Protection Agency</u>, 265 F. Supp. 2d 1142, 1154 n.16 (N.D. Cal. 2003).

Accordingly, the Court dismisses the 42 U.S.C. § 1983 Fourth Amendment claims against both Radford and the County of Alameda with prejudice.

### B.    42 U.S.C. § 1983 Due Process "Deprivation of Liberty" Claim

The FAC asserts that Radford, acting under color of state law, deprived Williams of her rights under the Fourteenth Amendment's Due Process Clause, and that the County's policies caused those constitutional violations (a <u>Monell</u> claim).  <u>See</u> FAC ¶¶ 43–52.  Specifically, Williams asserts that Radford deprived her of her liberty without due process of law.  <u>Id.</u> ¶ 44(a).  Williams sues both Radford and the County under 42 U.S.C. § 1983.  <u>Id.</u> ¶¶ 43–52.  Defendants seek to dismiss both claims; they argue that Williams has not suffered a deprivation of liberty and that Radford is entitled to qualified immunity.  MTD

United States District Court
Northern District of California

1   FAC at 12, 14.  The Court dismisses both claims with prejudice because Williams

2   concedes that she "has not pleaded a viable Section 1983 claim for deprivation of liberty."

3   Opp. at 3 (cleaned up).  Williams further concedes, "there was no deprivation of

4   'liberty.'"[8] Id.  Courts in such circumstances generally dismiss the relevant claim with

5   prejudice.  See Anigbogu v. Mayorkas, No. 21-cv-07419-TSH, 2022 WL 1304470, at *1–

6   *2 (N.D. Cal. May 2, 2022) (dismissing multiple claims with prejudice because plaintiff

7   agreed with defendant's arguments urging dismissal of those claims).

8       Williams also indicates that she does not intend to further pursue or amend this

9   claim, writing in her Opposition, "This is not a deprivation of liberty case."  Opp. at 4; see

10  also id. at 3 ("Defendants waste four whole pages tediously arguing a point that we readily

11  concede, [which is that we] have not [pled] a viable Section 1983 claim for deprivation of

12  liberty").

13      Accordingly, the Court dismisses the 42 U.S.C. § 1983 Fourteenth Amendment Due

14  Process Clause claims against both Radford and the County of Alameda with prejudice.

15      **C.    42 U.S.C. § 1983 Equal Protection Claims**

16      Williams's FAC asserts that Radford, acting under color of state law, deprived

17  Williams of her rights under the Fourteenth Amendment's Equal Protection Clause, and

18  that the County's policies caused those constitutional violations (a Monell claim).  See

19  FAC ¶¶ 43–52.  Williams sues both Radford and the County under 42 U.S.C. § 1983.  Id.

20  Defendants do not seek dismissal of Williams's § 1983 equal protection claim against

21  Radford, MTD FAC at 9, so the Court does not address that claim here.  Defendants do

22  seek dismissal of Williams's § 1983 equal protection claim against the County, and the

23  Court dismisses that claim with leave to amend.

24

25  ─────────────
    [8]As Williams concedes that there was no due process violation whatsoever (by Radford or
26  any other defendant), the County cannot be held liable for a constitutional violation that
    did not occur.  See Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill, 130 F.3d 432, 438 (9th
27  Cir. 1997); see also City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) ("If a person
    has suffered no constitutional injury at the hands of the individual [defendant], the fact that
28  the [municipality] might have authorized the [constitutional violation] is quite beside the
    point.")

1    Defendants argue that Williams has not alleged sufficient facts to meet the

2  standards for municipal liability set forth under <u>Monell</u>.  <u>Id.</u> at 17.  The Court agrees that

3  Williams has not satisfied <u>Monell</u>.  Williams argues that the Court should allow her to

4  conduct discovery because she qualifies for a relaxed pleading standard under <u>A.C. v.</u>

5  <u>Griego</u>, No. 2:16-cv-00746-JAM-CKD, 2016 WL 5930592 (E.D. Cal. Oct. 12, 2016).

6  <u>Griego</u> does not apply in this case.  The Court does, however, allow Williams to amend her

7  complaint and allege additional facts as to this claim.  <u>See</u> Fed. R. Civ. P. 15(a)(2)

8  (directing courts to "freely give leave" to amend "when justice so requires.").

9    **1.    Sufficiency of Pleadings**

10    To state a claim under 42 U.S.C. § 1983, a plaintiff must "plead that (1) the

11  defendants acting under color of state law (2) deprived plaintiff of rights secured by the

12  Constitution or federal statutes."  <u>Gibson v. United States</u>, 781 F.2d 1334, 1338 (9th Cir.

13  1986).  In <u>Monell</u>, the Supreme Court held that a plaintiff could sue municipalities directly

14  under § 1983 if their policies or customs cause such a constitutional violation.  436 U.S. at

15  690.  <u>Monell</u> claims, however, cannot rest on a theory of respondeat superior.  <u>Id.</u> at 691.

16  A plaintiff cannot hold a municipality liable simply because their employee commits a tort;

17  the municipality's policy or custom must be the "moving force" behind the constitutional

18  violation.  <u>Id.</u> at 694.

19    In full then, for a plaintiff to state a <u>Monell</u> claim, she must plausibly demonstrate

20  (1) that she possessed a constitutional right of which she was deprived; (2) that the

21  municipality had a policy; (3) that this policy amounts to deliberate indifference to the

22  plaintiff's constitutional right; and (4) that the policy is the moving force behind the

23  constitutional violation.  <u>Plumeau</u>, 130 F.3d at 438; <u>see also</u> <u>Bd. of Comm'rs of Bryan</u>

24  <u>Cnty. v. Brown</u>, 520 U.S. 397, 404 (1997) ("the municipality. . . through its <u>deliberate</u>

25  conduct . . . was the 'moving force' behind the injury alleged.") (emphasis in original).

26    There are various theories under which plaintiffs can demonstrate the existence of a

27  qualifying municipal policy, including longstanding practice or custom, <u>see</u> <u>Parker v. City</u>

28  <u>of Pittsburg</u>, No. 17-cv-01563-LB, 2017 WL 2986225, at *5 (N.D. Cal. July 13, 2017)

9

(requiring more than "random acts or isolated events" to establish a practice or custom), failure to train, see Connick v. Thompson, 563 U.S. 51, 61 (2011) (requiring plaintiffs to show that municipalities' failure to train amounted to deliberate indifference, i.e., that they were on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights) (citing Bd. of Comm'rs of Bryan Cnty., 520 U.S. at 407), and policymaker ratification, see Christie v. Iopa, 176 F.3d 1231, 1239 (9th Cir. 1999) (requiring plaintiffs to show that an authorized policymaker approved a subordinate's decision to establish ratification) (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)).

Without conceding the existence of a constitutional violation (equal protection or otherwise), see MTD FAC at 17, Defendants assert that Williams has not demonstrated the existence of a County policy.  See id.  Defendants assert that Williams's factual allegations are "vague," "conclusory," and "nonspecific," and do not allege a specific County policy under any of the above theories.  Id.

Williams's allegations against the County are contained in a section entitled "Statement of General Background Facts."  See FAC ¶¶ 13–24.  In that section, Williams alleges that the County "maintained customs, policies, or practices wherein . . . employees were encouraged, authorized, or otherwise permitted to engage in civil rights violations. . . .," id. ¶ 13 (cleaned up); see also id. ¶¶ 18, 23.  She alleges that "high ranking County Officials" demonstrated "deliberate indifference" to those civil rights violations, id. ¶ 14, and that the County demonstrated "deliberate indifference in the hiring, supervision, training and discipline of employee."  Id. ¶ 15; see also id. ¶ 17.  She alleges that the County was "on actual notice of problems" and that, "despite having notice of customs, policies, patterns, or practices" of constitutional violations, the County "failed to take any or appropriate remedial action" to prevent said violations.  Id. ¶¶ 21–22, 24.

Much of this language resembles the legal standards set forth in the caselaw cited supra.  Monell claims must do more than "simply recite the elements of the cause of action."  AE ex rel. Hernandez v. Cnty. of Tulare, 666 F.3d 631, 637 (9th Cir. 2012)

(quoting <u>Starr v. Baca</u>, 652 F.3d 1202, 1216 (9th Cir. 2011)).  Williams does not provide further details of County policy, does not provide details of any events or acts (much less a pattern of them), does not identify any County official (save Radford),[9] and does not identify an omission in any specific County training program.  <u>See</u> FAC ¶¶ 13–42.  She merely recites the law.  As such, Williams does not plausibly state a <u>Monell</u> claim.

Moreover, Williams recycles language from her Pleasanton Complaint.  <u>See</u> <u>supra</u> § I.A (Parties).  Both complaints allege, without detail, a custom or policy of civil rights violations, false police reports, and fabricated evidence against Black Americans. <u>Compare</u> Pleasanton Compl. ¶ 21 <u>with</u> FAC ¶ 13.  The complaints only differ in that the Pleasanton Complaint alleges, without detail, a custom or policy of using "excessive force" and false arrests against Black Americans, Pleasanton Compl. ¶ 21, while the FAC here alleges a custom of "malicious false accusations and actions."  FAC ¶ 13.

Judge Orrick noted in his order dismissing the Pleasanton Complaint that Williams's recitation of the elements of <u>Monell</u> liability fails to "identify any prior instances of excessive force or false arrests based on race or gender that could possibly support a custom or practice allegation or establish deliberate indifference by supervisors." <u>Williams v. Pleasanton</u>, 2021 WL 3932012, at *4.  The FAC here similarly fails to identify any prior instances of racially motivated, malicious accusations.  <u>See</u> FAC ¶¶ 13, 23 (alleging nonspecific "civil rights violations against Black Americans" and "disparate treatment," "excessive false police reports," and "other harassment" of Black Americans); <u>see also</u> <u>id.</u> ¶¶ 18, 20, 22 (further alleging nonspecific civil rights violations, including "fabrication of evidence, falsification of police reports, or other misconduct," along with policy maker ratification and failure to remedy).

Williams has simply used boilerplate language reciting possible variations of a <u>Monell</u> claim.  This Court follows Judge Orrick and dismisses the <u>Monell</u> claim with leave

---

[9] Williams has alleged that DOES 1 through 100 proximately caused Williams's injuries through negligence, breach of duty, negligent supervision, management, or control, battery, violation of constitutional rights, etc.  FAC ¶¶ 8–9.

United States District Court
Northern District of California

to amend, "so that [Williams] may identify the type of <u>Monell</u> claim she is alleging (custom or policy, failure to train, or failure to discipline and whether the City's liability is based on supervisorial ratification or deliberative indifference), to allege facts about the incident to support her claim . . . , and . . . to identify facts showing pattern of similar constitutional violations." <u>See</u> <u>Williams v. Pleasanton</u>, 2021 WL 3932012, at *4.

### 2.    Applicability of <u>A.C. v. Griego</u>

In her Opposition, Williams exclusively relies on an Eastern District of California case, <u>Griego</u>, 2016 WL 5930592, to argue against dismissal of her equal protection <u>Monell</u> claim.[10]  In <u>Griego</u>, the court allowed a "relaxed pleading standard" for a <u>Monell</u> claim alleging that the City of Fairfield had failed to adequately train a police officer who shot and killed José Ceja.  <u>Id.</u> at *1, *3–4.  The court thereby denied defendants' motion to dismiss the <u>Monell</u> claim.  <u>Id.</u> at *4.  Williams seeks the same relaxed pleading standard in this case and asks that the Court allow her to proceed to discovery.  Opp. at 7.  Defendants counter that the plaintiff in <u>Griego</u> pled at least "some facts,"[11] and Williams essentially pleads no facts at all.  Reply at 7.

Neither the Northern District of California nor the Ninth Circuit has embraced the reasoning in <u>Griego</u> or its antecedents, <u>Phillips v. County of Fresno</u>, No. 1:13–cv–0538 AWI BAM, 2013 WL 6243278 (E.D. Cal. Dec. 3, 2013), and <u>Estate of Duran v. Chavez</u>, No. 2:14-cv-02048-TLN-CKD, 2015 WL 8011685 (E.D. Cal. Dec. 7, 2015).  Northern District of California cases dealing with requests for a relaxed pleading standard have uniformly ruled <u>Griego</u> and its antecedents inapplicable.  <u>See, e.g.</u>, <u>Crosby v. Wellpath, Inc.</u>, No. 20-cv-08529-MMC, 2021 WL 3053056 (N.D. Cal. July 20, 2021); <u>Mondragon v. City of Fremont</u>, No. 18-cv-01605-NC, 2020 WL 1156953 (N.D. Cal. March 10, 2020);

---

[10] Williams and Defendants tend not to differentiate among the <u>Monell</u> claims, <u>see</u> <u>supra</u> n.11, and as such Williams defends all of her <u>Monell</u> claims with this argument.  Because the Court has already dismissed the Fourth Amendment and due process <u>Monell</u> claims, the Court restricts its analysis to the equal protection <u>Monell</u> claim.

[11] In <u>Griego</u>, the plaintiff alleged that the police officer who shot the victim was called a "rookie" by another fellow officer and was told by another to "wait, wait, wait."  <u>Griego</u>, 2016 WL 5930592, at *4.  The court wrote that both details "implicate training or lack thereof."  <u>Id.</u>  There are no analogous allegations here.

United States District Court
Northern District of California

Wilson v. Town of Danville, No. 17-cv-00863-DMR, 2017 WL 2335545 at *3 (N.D. Cal. May 30, 2017).

Moreover, as persuasive authority, the caselaw from the Eastern District is muddled. It does not specify how few facts plaintiffs can plead and still satisfy the relaxed pleading standard. In Phillips, the court emphasized that though the allegations were "sparse," plaintiff at least pointed to newspaper articles detailing prison overcrowding and a class-action suit. Phillips, 2013 WL 6243278, at *10–*11. In Duran, however, the Court apparently allowed a claim of supervisory liability for customs/practices/policies to proceed without any factual details tying named supervisors to the incident. Duran, 2015 WL 8011685, at *9. Finally, in Griego itself, the court's exact language was, "Plus, Plaintiffs have pled some facts," Griego, 2016 WL 5930592, at *4.

Given the muddled nature of this relaxed pleading standard and the lack of endorsement by the Ninth Circuit and the Northern District, the Court does not endorse Griego's reasoning. Williams's allegations are too sparse; Defendants have no actual notice of what information Plaintiff seeks and from what source. Accordingly, the Court dismisses the 42 U.S.C. § 1983 Fourteenth Amendment Equal Protection Clause claim against the County of Alameda, with leave to amend.

### D.   State Law Claims

Williams's FAC alleges that Radford violated California Civil Code section 51.7 (the Ralph Act) and California Civil Code section 52.1 (the Bane Act) and committed common-law negligence. Id. ¶¶ 53–65. Williams also brings claims based on these violations against the County of Alameda via respondeat superior. Id. ¶¶ 56, 61, 65. Defendants argue that California Welfare and Institutions Code section 15634(a) provides absolute immunity to Radford for all asserted violations of state law. See MTD FAC at 17–20. If Radford is immune, then immunity extends to the County as well. See Cal. Gov't Code § 815.2(b) ("… a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."). Williams addresses Radford's assertion of immunity by exclusively relying on

a "2020 Amendment" to the Ralph Act.  See Opp. at 5–9.  This amendment, however, does not defeat Radford's immunity.  Accordingly, the Court dismisses all of Williams's state law claims.

### 1.    Welfare and Institutions Code Section 15634(a) Immunity

California Welfare and Institutions Code section 15634(a) affords employees of adult protective services agencies (among others) immunity from any civil and criminal liability when they make a report of elder abuse.  Cal. Welf. & Inst. Code § 15634(a) ("No . . . employee of an adult protective services agency . . . who reports a known or suspected instance of abuse of an elder or dependent adult shall be civilly or criminally liable for any report . . .).[12]

Although Williams has disputed Radford's job title, see supra n.2, Williams concedes that Radford is an employee of the County of Alameda's Adult Protective Services, an adult protective services agency.  In her FAC, Williams alleges that Radford is an employee of the County of Alameda's Social Services Agency.  FAC ¶¶ 25, 42. Williams, however, also alleges that the City of Dublin police referred to Radford as "Nicole from Alameda County Adult Protective Services."  See id. ¶ 27.  In their MTD, Defendants clarify that Radford is "employed by Adult Protective Services of defendant County of Alameda."  MTD FAC at 8, 9.  Williams does not dispute this characterization of Radford's employment in her Opposition.  See Opp. at 1 (wherein Williams agrees, "Defendants for the most part . . . fairly summarize our FAC," and only objects to the suggestion that Radford actually received an anonymous report).  As a matter of agency

---

[12] The section reads: "No . . . employee of an adult protective services agency or a local law enforcement agency who reports a known or suspected instance of abuse of an elder or dependent adult shall be civilly or criminally liable for any report required or authorized by this article."  Id. Neither party's briefs address what reports are required or authorized by § 15634(a) and its associated sections.  This phrase does play a role in the § 15634(a) jurisprudence.  See, e.g., Valero v. Spread Your Wings, LLC, 88 Cal. App. 5th 243, 262 (Cal. Ct. App. 2023) ("This immunity, [the plaintiff] contends, is coextensive with the requirement to report, which, per [plaintiff's] argument, is limited to instances of known or suspected abuse, or abuse told to the mandatory reporter by the elder or dependent adult.").  The Valero court, however, disagreed with its plaintiff and held that § 15634(a) provided a broad and absolute immunity.  See id. at 263, 265 (discussed infra).

14

1    organization, Adult Protective Services is part of the County of Alameda's Social Services

2    Agency.  See Older Adult Abuse and Neglect, ALAMEDA CNTY. SOC. SERV. AGENCY,

3    https://www.alamedacountysocialservices.org/our-services/Abuse-and-Protection/adult-

4    and-senior-abuse/index (last visited July 5, 2023).  Given these circumstances, the Court

5    considers Radford an employee of an adult protective services agency.

6        As Radford is an employee of an adult protective services agency, Defendants

7    assert that § 15634(a) affords Radford immunity from any claims arising out of her reports

8    of elder abuse.  See MTD FAC at 17–20; Reply at 9–12.[13]  Defendants assert that this

9    immunity applies even if the reports of elder abuse are false.  See MTD FAC at 18–19;

10   Reply at 10.

11       California state courts have consistently held that California Welfare and

12   Institutions Code section 15634(a) provides absolute immunity for mandated reporters.

13   Employees of adult protective services are mandated reporters.  Cal. Welf. & Inst. Code §

14   15634(a) (". . . [an] employee of a county adult protective services agency…, is a

15   mandated reporter.").  The immunity provided by § 15634(a) is "sweeping in its breadth"

16   and "an absolute privilege."  Easton v. Sutter Coast Hosp., 80 Cal. App. 4th 485, 489, 491

17   (Cal. Ct. App. 2000); see also Santos v. Kisco Senior Living, LLC, 1 Cal. App. 5th 862,

18   871 (Cal. Ct. App. 2016) ("In order to further ensure that mandated reporters comply with

19   their reporting obligations, section 15634 . . . , 'create[s] an absolute privilege in those

20   individuals required to make such reports. . . .'") (quoting Easton, 80 Cal. App. 4th at 489).

21       Indeed, a California court held just this year that § 15634(a) immunity applies even

22   if a mandated reporter knowingly makes a false report of elder abuse.  In Valero v. Spread

23   Your Wings, LLC, the court held that "the absolute immunity afforded to mandated

24   reporters by the Legislature in section 15634(a)—'sweeping in its breadth'—extends to

25   knowingly false or fabricated reports."  88 Cal. App. 5th at 265 (internal citations omitted)

26

27   [13] Defendants also assert other government code immunities, including Government Code
     sections 815, 818.8, 818, 821.6, 820.8, 820.2, and 822.2.  See MTD FAC at 20–21; see
28   also Reply at 12–13.  As California Welfare and Institutions Code section 15634(a)
     provides absolute immunity, the Court does not address them here.

15

United States District Court
Northern District of California

(emphasis added).  The <u>Valero</u> court observed that legislative intent favors absolute immunity from suit for mandated reporters.  <u>Id.</u> at 263 (referencing the legislative goals of § 15634(a): "to increase the reporting of incidents of elder and dependent-care abuse and to reduce the forces that chill such reporting, such as the fear of suit, meritorious or not.").

Even if, as alleged, Radford made multiple knowingly false reports of elder abuse and fabricated an anonymous report to justify those reports, California Welfare and Institutions Code section 15634(a) affords Radford absolute immunity.  Immunity extends to the County as well.  <u>See</u> Cal. Gov't Code § 815.2(b).

### 2. "2020 Amendment" (A.B. 1775) to California Civil Code section 51.7 (the Ralph Act)

In her Opposition, Williams exclusively relies on a "2020 amendment" to the Ralph Act, A.B. 1775, to defeat Defendants' asserted California Welfare and Institutions Code section 15634(a) immunity (and other asserted immunities).  <u>See</u> Opp. at 5–9.  Williams does not address <u>Valero</u>, which post-dates the 2020 amendment, in her Opposition.  <u>See</u> <u>id.</u> Prior to A.B. 1775, the Ralph Act provided "that all persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence . . . ," committed against them because of a protected characteristic.  State Assemb. 1775 § 2, 2019–2020 Leg., Reg. Sess. (Cal. 2020).  Among other additions, A.B. 1775 provided "that intimidation by threat of violence includes knowingly or recklessly making or threatening to make a false claim or report to a peace officer . . . alleging that another person has engaged in unlawful activity."  <u>Id.</u>; <u>see also</u> Cal. Civ. Code § 51.7(b)(2). Williams asserts in her Opposition that the California Legislature intended A.B. 1775's explicit designation of false police reports as intimidation to negate immunities, including § 15634(a).  <u>See</u> Opp. at 8–9.

A.B. 1775 does not apply here, for two reasons.  One, A.B. 1775 was not in effect when the events of the present case occurred.  Despite Williams's attempts to categorize A.B. 1775 as a "clarification" of existing law, Williams does not adequately address this retroactivity issue.  Two, it is the opinion of this Court that the Legislature did not intend

16

A.B. 1775 to negate § 15634(a) immunity.

### a.     Retroactivity

The current iteration of the Ralph Act does not apply in the present case because A.B. 1775 went into effect on January 1, 2021,[14] a year after the alleged events on December 31, 2019.  Cal. Civ. Code § 51.7 (<u>see</u> "Credits," West's Ann. Cal. Civ. Code § 51.7); <u>see also</u> FAC ¶¶ 25, 27.  "Generally, statutes operate prospectively only."  <u>Myers v. Philip Morris Co., Inc.</u>, 28 Cal. 4th 828, 840 (Cal. 2002).  Williams, however, argues that A.B. 1775 only "clarified" already existing law, and that false police reports have always qualified as "intimidation by threat of violence" under the Ralph Act.  Opp. at 5–7.  "If the amendment merely clarifies existing law," the amendment presents "no question of retroactivity" because the law has not actually changed.  <u>Id.</u> at 6 (quoting <u>McClung v. Emp. Dev. Dept.</u>, 34 Cal. 4th 467, 471 (Cal. 2004) (internal citations omitted)).

Williams admits that the legislative history of A.B. 1775 provides no "explicitly specific statements" indicating that A.B. 1775's new language should be treated as a "clarification."  <u>Id.</u> at 6.  She instead argues that the structure of the amended Ralph Act suggests that the Legislature intended the new language to be a "clarification."  <u>See id.</u>  Williams argues that if A.B. 1775 "intended to create fresh law, the obviously logical approach would have been to create a new subsection (c)," instead of including the new language in subsection (b)(2).  <u>Id.</u>  She surmises that by including the language in (b)(2), A.B. 1775 "further defines" and "clarifies" the original section (b).  <u>Id.</u> at 7.

But the structure of the amended Ralph Act does not conclusively demonstrate the Legislature's intent regarding retroactivity.[15]  The current structure of the Act is consistent

---

[14] Williams refers to A.B. 1775 as the "2020 amendment" to the Ralph Act.  <u>See id.</u> at 5–6.  Defendants point out that the amendment went into effect on January 1, 2021 and refer to it as the 2021 amendment.  <u>See</u> Reply at 10–11.  Out of deference to Williams, the Court refers to A.B. 1775 as the "2020 amendment" when discussing her arguments and otherwise as A.B. 1775.

[15] Defendants do not directly address Williams's statutory structure argument.  <u>See</u> Reply at 11.  Instead, Defendants argue that Williams's "clarification" argument has no backing in the caselaw.  <u>See id.</u>  Defendants also object to Williams's RJN insofar as it requests that the Court notice the "fact" that A.B. 1775 "clarified" the Ralph Act, arguing that Williams cannot request that the Court notice a disputed fact.  <u>See id.</u>  Finally, Defendants argue

1    with both a clarification of the law and the creation of new law.  One could reasonably

2    read the added language (explicitly designating false police reports as intimidation by

3    threat of violence) as a new instantiation of the general phrase, "intimidation by threat of

4    violence."  See Cal. Civ. Code § 51.7(b)(2).  It makes sense that the Legislature would

5    have included the new instantiation of a phrase found in section (b) under the same section.

6    The structure of the Ralph Act therefore provides no help in determining whether A.B.

7    1775 clarified or expanded the meaning of "intimidation by threat of violence."  See id.

8        As Williams does not provide any further caselaw or legislative history to support

9    her assertion that A.B. 1775 "clarifies" existing law, see Opp. at 6–7, Williams has not

10   adequately supported her argument.  Defendants also could not find any cases prior to the

11   passage of A.B. 1775 holding that false police reports have always amounted to

12   "intimidation by threat of violence."  Reply at 11.  Accordingly, the Court holds that the

13   current language of the Ralph Act does not apply to the present case.

### b.    Negating Immunity

15       Williams's arguments against Defendants' asserted immunities relies on the

16   application of A.B. 1775 to the present case; without it, none of the following arguments

17   have merit.  But even if A.B. 1775 did apply, it would not defeat Radford's absolute

18   immunity under California Welfare and Institutions Code section 15634(a).

19       Williams asserts that A.B. 1775's "clarification" covers all California immunity

20   statutes, i.e., that all California immunity statutes already included exceptions for false

21   police reports.  See Opp. at 7–9.  In essence, she maintains that the Legislature intended

22   A.B. 1775 to "negate" any immunity statute that would have otherwise protected Radford

23   from liability for making a false police report, pointing to the modification of California

24   Civil Code section 47(b) as evidence of this intent.  See id. at 8.  Williams argues that

25   because A.B. 1775 modified the language of California Civil Code section 47(b) to clarify

27   that, if A.B. 1775's amendment means that the Ralph Act always viewed false police
     reports as "intimidation by threat of violence," see id.; see also infra § D.2.b (Overruling
28   Immunity), then, "No amendment to Civil Code section 51.7 would have been required"
     on top of the amendment to Civil Code section 47.  Reply at 11.

United States District Court
Northern District of California

that false reports are not privileged communications, by analogy the "substantially similar" § 15634(a) should no longer extend immunity to false police reports. <u>See id.</u> Williams speculates that the authors of A.B. 1775 "overlooked amending immunity/privilege statutes" other than § 47(b). <u>Id.</u> Williams asserts that the Legislature intended A.B. 1775 to "abrogate" or "negate" all immunity statutes enacted prior to A.B. 1775, insofar as they provided immunity for false police reports. <u>Id.</u>

Williams's argument fails for three reasons. First, it simply strains credulity to suggest that the Legislature amended one statute to accommodate changes in the Ralph Act but somehow forgot all other statutes. <u>See id.</u> at 7. It is more likely that the Legislature specifically intended to leave the other immunity statutes intact, including California Welfare and Institutions Code section 15634(a). Second, § 15634(a) pertains to elder abuse while § 47(b) does not. <u>Valero</u> held that there are policy reasons for specifically extending absolute immunity to mandated reporters of elder abuse. <u>See supra</u> § D.1 ("Welfare and Institutions Code Section 15634(a) Immunity"). The two statutes are not "substantially similar." <u>See</u> Opp. at 8. Third, "it is generally recognized that a statutory governmental immunity overrides a statute imposing liability." <u>Gates v. Superior Ct.</u>, 32 Cal. App. 4th 481, 510 (Cal. Ct. App. 1995). Accordingly, §15634(a) immunity would still override the Ralph Act, even if the current language applied to events on December 31, 2019.

In sum, Williams fails to overcome Defendants' asserted immunity against her state law claims. Accordingly, the Courts dismisses all of the state law claims against both Radford and the County of Alameda with prejudice.

### E.     California Constitution Article I Section 7 Amended Claim

Williams seeks leave to add a claim asserting that Radford violated the equal protection clause of the California state constitution (Article I, Section 7). <u>See</u> Opp. 9–10. Williams does not explicitly say against whom she brings this claim. <u>See id.</u> at 9 (". . . we learned of an additional claim that Plaintiff should be given leave to add in a further amended complaint); <u>see also id.</u> at 10 (". . . Plaintiff should be given leave to file a

Second Amended Complaint which adds a claim for damages for violation of the Equal Protection clause of the California constitution, i.e., Article 1, Section 7.").  In general, the Court gives leave to amend when justice so requires.  Fed. R. Civ. P. 15(a)(2).  Defendants have not sought to dismiss Williams's federal § 1983 claim against Radford asserting equal protection violations; this would suggest that an analogous state claim could be viable.  The difficulty, however, is that Plaintiff intends to sue for money damages only.  See Opp. at 9.  As explained below, the caselaw suggests that Article I, Section 7 does not provide for damages as a form of relief.  Nevertheless, the Court will give Williams the opportunity to make her claim.  The Court, however, restricts her from seeking money damages under the new claim.

### 1.    General Rule re Damages

As Defendants note, California courts have held that the California constitution's equal protection clause generally prohibits damages as a remedy.  See Reply at 13; see, e.g., Javor v. Taggart, 98 Cal. App. 4th 795, 807 (Cal. Ct. App. 2002) ("It is beyond question that a Plaintiff is not entitled to damages for a violation of the due process clause or the equal protection clause of the state Constitution."); see also Gates v. Superior Ct., 32 Cal. App. 4th 481, 518 (Cal. Ct. App. 1995) (" . . . we conclude there is no evidence of any intent on the part of the voters to permit the recovery of personal injury damages as a result of a violation of the equal protection provisions of the California Constitution.").

### 2.    Whooley

Williams, however, cites to the opinion of another Northern District court, which held there is an exception to this general rule: "A plaintiff, however, may state a claim for damages under Article I, Section 7 if the claim is tied to an established common law or statutory cause of action."  Opp. at 9–10 (quoting Whooley v. Tamalpais Union High Sch. Dist., 399 F. Supp. 3d 986, 997 (N.D. Cal. 2019)).  Williams argues that, just as Judge Seeborg permitted the plaintiff in Whooley to attach an equal protection claim for damages to her federal Rehabilitation Act claim, this Court should allow Williams to add an equal protection claim for damages to her federal § 1983 claim.  See Opp. at 10.

1    Defendants respond that the reasoning in <u>Whooley</u> "is not an accurate statement of

2    law" and that the "mere existence of some other viable legal claim" does not "permit a

3    plaintiff to sue for money damages for a violation of the California Constitution."  Reply at

4    14.  Defendants argue that California courts determine whether a constitutional provision

5    allows for damages as a remedy through a multi-factor analysis.  <u>Id.</u>  Finally, Defendants

6    contend that California courts, such as the one in <u>Gates</u>, have already conducted this

7    analysis and concluded there is no right to damages under California's equal protection

8    clause.  <u>Id.</u>

9    The Court agrees with Defendants.

10    <u>Whooley</u> relied on <u>Julian v. Mission Community Hospital</u>, which in relevant part

11    reads, "There is no cause of action for damages for alleged violations of . . .  article I,

12    section 7, subdivision (a) (due process and equal protection), when such an action is not

13    tied to an established common law or statutory action. . . ."  <u>Whooley</u>, 399 F. Supp. 3d at

14    997 (citing <u>Julian v. Mission Cmty. Hosp.</u>, 11 Cal. App. 5th 360, 391 (Cal. Ct. App.

15    2017)).  This language does suggest that California equal protection claims for damages

16    can piggyback on other, independent causes of action.[16]  Importantly, however, <u>Julian</u> cited

17    to <u>Katzberg v. Regents of University of California.</u>  <u>Julian</u>, 11 Cal. App. 5th at 391 ("There

18    is no cause of action for damages for alleged violations of California Constitution . . . ,

19    article I, section 7, subdivision (a) (due process and equal protection), when such an action

20    is not tied to an established common law or statutory action. . . .") (citing <u>Katzberg v.</u>

21    <u>Regents of Univ. of Cal.</u>, 29 Cal. 4th 300, 303, 321 (Cal. 2002)).  And the cited language

22    from <u>Katzberg</u> reads, "We grant review in this matter. . . to consider whether an individual

23    may bring an action for money damages on the basis of an alleged violation. . .  of the

24

25    [16] The Court interprets <u>Whooley</u> as allowing equal protection claims for damages to
26    piggyback on other <u>independent</u> causes of action (i.e., causes of action that do not
      reference violations of the equal protections clause) because (1) Williams argues as such,
27    <u>see</u> Opp. 9–10 ("… where the claim for constitutional violations damages is related to
      another <u>independent</u> federal or state claim…,"), and (2) the plaintiff in <u>Whooley</u> brought
28    her other cause of action under section 504 of the Rehabilitation Act, <u>see</u> <u>Whooley</u>, 399 F.
      Supp. 3d at 996.

United States District Court
Northern District of California

California Constitution. . . in the absence of a statutory provision or an established common law tort <u>authorizing such a damage remedy for the [California] constitutional violation</u>."  <u>Katzberg</u>, 29 Cal. 4th at 303 (emphasis added).[17]

   <u>Julian</u> truncated <u>Katzberg</u>, with unfortunate effect.  In <u>Katzberg</u>, the emphasized language above served as an uncontroversial framing of the legal issue.  The plaintiff in <u>Katzberg</u> sued directly under Article I, Section 7; he did not sue under a statutory provision or common law tort which explicitly authorized damages as a remedy for California constitutional violations.  <u>See id.</u> at 303, 306.  If he had, he would obviously be entitled to sue for damages.  The <u>Katzberg</u> court dealt with the narrow issue of whether Article I, Section 7 itself provides for damages as a remedy.  <u>See id.</u> at 307 ("The question presented here is whether . . . , plaintiff may maintain an action for monetary damages to remedy the asserted violation of his due process liberty interests under article I, section 7(a). . . .").  It did not suggest that an equal protection claim for damages could piggyback on other independent causes of action.  The <u>Julian</u> court construed <u>Katzberg</u> too broadly when it created a new and separate avenue for damage claims, and <u>Whooley</u> employed this overly broad interpretation.

   In the present case, Williams attempts to piggyback her state equal protection claim on her federal § 1983 claim.  Opp. at 9–10.  The California Supreme Court in <u>Katzberg</u> did not authorize that.  Admittedly, § 1983 does authorize damages for constitutional violations.  <u>See</u> <u>Carey v. Piphus</u>, 435 U.S. 247, 254 (1978) ("Insofar as petitioners contend that the basic purpose of a § 1983 damages award should be to compensate persons for injuries caused by the deprivation of constitutional rights, they have the better of the argument.").  Defendants explain, though, that § 1983 "can only be used to assert violations of <u>federal</u> rights."  Reply at 14 (citing <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988)

---

[17] When the Katzberg court wrote "<u>the</u> constitutional violation" in the emphasized section, it was referring to  "an alleged violation . . . of the California Constitution."  <u>Id.</u>  If the court had meant to reference a statute or tort that authorized a damage for <u>any</u> constitutional violation, it would have likely written "a constitutional violation" or "any constitutional violation."  Its use of "the" implies a specific constitutional violation that has already been discussed, which in this case was the California Constitution violation.

1   ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by

2   the Constitution and laws of the United States.") (emphasis added)).  Katzberg only refers

3   to statutes or common law torts authorizing damages for violations of rights guaranteed by

4   the California Constitution.  See supra n.17.  But even if Katzberg refers to the violation of

5   rights guaranteed by both the California and federal constitutions, it only held that an

6   action for damages is not available under Article I, Section 7's due process clause absent

7   other "statutory provisions" or "common law torts."  Katzberg, 29 Cal.4th at 303.  It did

8   not hold that an action for damages is necessarily available in the presence of other statutes

9   or torts.

10   Instead, the Supreme Court of California approvingly cited Gates in Katzberg,

11   writing, "Like the Court of Appeal in Gates . . . which examined these same materials in

12   order to consider the voters' implied intent to create a damages remedy with respect to the

13   equal protection clause of article I, section 7(a) . . . we find nothing in the ballot materials

14   to suggest that the voters affirmatively intended to create, within article I, section 7(a), a

15   damages remedy with respect to the due process clause set forth in this constitutional

16   provision."  Id. at 320.  The Court therefore concludes that the California equal protection

17   clause does not allow for damages as a remedy.

18   Accordingly, the Court gives leave to Williams to amend her complaint and add a

19   claim under the California Constitution's equal protection clause, but does not permit her

20   to seek damages in connection with that claim.

21   **F.    Requests for Judicial Notice**

22   Finally, both parties seek judicial notice of documents.  Defendants request that the

23   Court take notice of the fact that state law and regulations require an investigation of

24   allegations of elder abuse.  See Defendants' RJN.  Defendants' requested fact is

25   undisputed, and as such the Court notices said fact.  See Fed. R. Evid. 201(b), (c)(2).

26   Williams seeks judicial notice of the entire legislative history of A.B. 1775 (the

27   "2020 amendment," see supra § D.2).  See Williams's RJN.  Defendants contend, and the

28   Court agrees, that it is not clear which fact Williams asks the Court to notice.  See Obj. to

1 | Williams's RJN at 2 (dkt. 41 attach. 1).  The Court denies Williams's RJN.

2 |       Under Rule 201(b) of the Federal Rule of Evidence, a court may take notice of an

3 | adjudicative fact if it is "not subject to reasonable dispute."  A fact is "not subject to

4 | reasonable dispute" if it is "generally known" or can be determined from sources "whose

5 | accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(1–2); see also Khoja v.

6 | Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018).  A court "must take

7 | judicial notice if a party requests it and the court is supplied with the necessary

8 | information."  Fed. R. Evid. 201(c)(2).

9 |       A court, however, "must also consider—and identify—which fact or facts it is

10 | noticing from such a transcript.  Just because the document itself is susceptible to judicial

11 | notice does not mean that every assertion of fact within that document is judicially

12 | noticeable for its truth."  Khoja, 899 F.3d at 999.  A court may choose to notice public-

13 | record documents but not disputed facts within them.  See Williams v. Alameda Cnty., No.

14 | 3:22-cv-01274-LB, No. 3:22-cv-02705-LB, 2022 WL 17169833, at *6 (N.D. Cal. Nov. 22,

15 | 2022).

### 1.  Defendants' RJN

17 |       Defendants ask the Court to take notice of two facts: (1) the existence of a legal

18 | duty to investigate allegations of elder abuse and (2) that the investigation must include an

19 | attempt to meet privately with the suspected victim.  Defendants' RJN ¶ 1–2.  Defendants

20 | cite to multiple sections of the California Welfare and Institutions Code, of which section

21 | 15762 is sufficient ("When an allegation of abuse of an elder. . . is reported to a county

22 | designated adult protective service agency and an agency social worker has reason to

23 | believe an elder . . . has suffered or is at substantial risk of abuse . . ., the social worker

24 | shall attempt to obtain consent to enter and meet privately with the elder.").  There appears

25 | little room for reasonable dispute; the language is clear and unambiguous.

26 |      The Court grants Defendants' request.

### 2.  Williams's RJN

28 | If a plaintiff fails to identify what fact she wishes the court to take judicial notice of,

United States District Court
Northern District of California

24

the court can deny the request as vague and ambiguous.  Cota v. Aveda Co., No. 3:20-cv-01137-BEN-BGS, 2020 WL 6083423, at *10 (S.D. Cal. Oct. 14, 2020).  Williams does not indicate what fact she wishes the Court to notice.  See Williams's RJN at 0 (consisting of a single sentence, "Plaintiff submits herewith . . . the Legislative History of the 2020 Amendment . . . and asks that the Court take Judicial Notice of it.").  Williams has failed to hold up her end of the RJN bargain.

The Court can at most notice the legislative history's existence; it cannot notice the truth of its content.  See Hart v. Facebook Inc., No. 22-cv-737-CRB, 2023 WL 3362592, at *2 n.2 (N.D. Cal. May 9, 2023) ("The Court can only note that this tweet exists, but it cannot take judicial notice of the truth of its content.") (citing Threshold Enters. Ltd. v. Pressed Juicery, Inc., 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020)).  The Court does not notice any statements as to the nature or purpose of the amendment to the Ralph Act.

Accordingly, the Court grants Defendants' request for judicial notice and denies Williams's request for judicial notice.

IV.    CONCLUSION

For the foregoing reasons, the Court:

1. Grants the motion to dismiss, with leave to amend only the § 1983 equal protection claim against the County.

2. Allows Williams to add a California Constitution claim asserting violations of California's equal protection clause (Article I, Section 7).  Williams may not seek damages in connection with that claim.

3. Grants Defendants' RJN and denies William's RJN.

Should Williams wish to amend, she must do so within thirty days of this order.

IT IS SO ORDERED.

Dated: July  14 , 2023

_____
CHARLES R. BREYER
United States District Judge